[Cite as *Hargrove v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-7048.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JUDAH HARGROVE

    Plaintiff

    v.

DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant

Case No. 2010-10777

Judge Joseph T. Clark
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶1} Plaintiff brought this action alleging that an employee of defendant used excessive force against him such that it constituted a civil battery. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} As an initial matter, on October 19, 2011, defendant filed a motion in limine to prevent plaintiff from introducing inadmissable character evidence. See Evid.R. 404(B). Upon review, the motion is GRANTED.

{¶3} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Warren Correctional Institution (WCI) pursuant to R.C. 5120.16. Plaintiff testified that on the morning of August 3, 2010, he returned to WCI housing unit 2B after a 7:45 a.m. dentist appointment. According to plaintiff, his intention was to go to his cell and collect materials to take with him to the library at 8:45 a.m. Plaintiff testified that when he discovered that his cell door was closed and locked, he asked Corrections Officer (CO) Shannon Armstrong to open it. According to plaintiff, Armstrong told him he had to wait and Armstrong became agitated when plaintiff pressed the issue, so he dropped it and began talking to another inmate. Plaintiff

testified that while he was talking to this other inmate, Armstrong ran toward him, called him a "rapist protector," sprayed him with pepper spray, and ordered him "to the wall." According to plaintiff, he complied with the order, at which time CO Gary Garrison arrived on the scene and placed him in handcuffs. Plaintiff asserts that Armstrong's use of the pepper spray was unjustified and constituted a battery.

{¶4} The Ohio Administrative Code sets forth the circumstances under which force may be lawfully utilized by prison officials and employees in controlling inmates. Ohio Adm.Code 5120-9-01(C) provides, in relevant part:

{¶5} "(2)   Less-than-deadly force.   There are six general circumstances in which a staff member may use force against an inmate or third person.   A staff member may use less-than-deadly force against an inmate in the following circumstances:

{¶6} "(a)   Self-defense from physical attack or threat of physical harm;

{¶7} "(b)   Defense of another from physical attack or threat of physical attack;

{¶8} "(c)   When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders;

{¶9} "(d)   When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance;

{¶10} "(e) Prevention of an escape or apprehension of an escapee; or

{¶11} "(f) Controlling or subduing an inmate in order to stop or prevent self-inflicted harm."

{¶12} The court has recognized that "corrections officers have a privilege to use force upon inmates under certain conditions. * * * However, such force must be used in the performance of official duties and cannot exceed the amount of force which is reasonably necessary under the circumstances. * * * Obviously, 'the use of force is a reality of prison life' and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Mason v. Ohio*

*Dept. of Rehab. & Corr.* (1990), 62 Ohio Misc.2d 96, 101-102. (Internal citations omitted.)

{¶13} Armstrong testified that the incident occurred at approximately 8:20 a.m. on August 3, 2010. According to Armstrong, plaintiff returned from his dentist appointment and demanded that she open the door to his cell. Armstrong stated that she informed plaintiff that she had just completed her regular "range check" and that she would be doing another one in about 20 minutes and would open his cell then. Armstrong testified that plaintiff again demanded that she open his cell door and stated, "It's your world now, but it's going to be mine when I get out and I'll be in your's bitch." Armstrong testified that she felt threatened by the statement and, as a result, ordered plaintiff to "cuff up." According to Armstrong, plaintiff ignored the order and assumed a threatening stance, prompting her to administer a short burst of pepper spray. Armstrong stated that she then ordered plaintiff "to the wall" and to once again "cuff up," but that plaintiff again refused. Armstrong testified that she administered another short burst of pepper spray. CO Garrison then arrived on the scene and ordered plaintiff to "cuff up," which he did. Armstrong stated that plaintiff was placed in handcuffs and escorted to the medical department by two other COs.

{¶14} Regarding the use of pepper spray, Armstrong explained that she and other COs are trained in a use of force "continuum," which ranges from a minimum amount of force to deadly force, based upon the situation with which they are presented. Armstrong stated that verbal commands followed by pepper spray are considered the minimum amounts of force on the continuum. Armstrong testified that following the incident she prepared reports and appeared in front of a Use of Force Committee to explain the incident. According to Armstrong, after an investigation, the committee found that her use of force was justified and she was not disciplined for the incident. (Plaintiff's Exhibit 10, Defendant's Exhibit A.)

{¶15} Garrison testified that at the time of the incident, he was patrolling the top range of unit 2B when he heard a "commotion" from the lower range. Garrison stated that he heard plaintiff threaten Armstrong and then heard Armstrong order plaintiff "to the wall." According to Garrison, he proceeded down the stairs and witnessed Armstrong administer the second burst of pepper spray. Garrison testified that when he arrived on the scene, he ordered plaintiff to "cuff up," and that plaintiff complied. He then removed plaintiff from the unit and delivered him into the custody of two other COs for escort to the medical department.

{¶16} Garrison further testified that plaintiff was the only inmate in the unit not in his cell, and that when he arrived on the scene, plaintiff was acting "kind of aggressive." Garrison stated that he prepared a report about the incident and later testified in front of the Use of Force Committee. (Plaintiff's Exhibit 15, Defendant's Exhibit A.)

{¶17} Corrections Lieutenant Mitchell Vance is the first and second shift supervisor at WCI and was the chairman of the Use of Force Committee that investigated the incident. Vance testified that in conducting the investigation, he interviewed Armstrong, Garrison, and plaintiff, and reviewed the reports filed by Armstrong and Garrison. Vance stated that it was the committee's determination that Armstrong was justified in using force after she was threatened by plaintiff and plaintiff refused to follow her orders. (Defendant's Exhibit A.) Vance agreed that the use of pepper spray is the least amount of force on the use of force continuum.

{¶18} Based upon the evidence and testimony presented at trial, the court finds that plaintiff threatened Armstrong and refused to comply with her orders and that Armstrong was therefore justified and privileged to use pepper spray against plaintiff. Accordingly, judgment is recommended in favor of defendant.

{¶19} Furthermore, to the extent that plaintiff argues that Armstrong is not entitled to civil immunity for her actions, the court finds that Armstrong was acting within the course and scope of her employment with defendant at all times and that she did not act

with a malicious purpose, in bad faith, or in a wanton or reckless manner. Accordingly, it is recommended that Armstrong be entitled to immunity pursuant to R.C. 9.86 and 2743.02(F) and that the courts of common pleas not have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Ashley L. Oliker                          Judah Hargrove
Stephanie D. Pestello-Sharf               5704 Winton Rd.
Velda K. Hofacker                         Fairfield, Ohio 45014
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

MCR/dms
Filed December 23, 2011
To S.C. reporter March 20, 2012